**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MARGO SIMMONS,** individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>**AUTHOR REPUTATION PRESS LLC**<br><br>   *Defendant.* | Case No. 24-cv-12330-BEM<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY
INCLUDING THE PRODUCTION OF CALLING DATA
<u>NECESSARY FOR CLASS CERTIFICATION</u>**

To begin this case, the parties had a straightforward dispute: should all discovery be permitted to proceed in one discovery period or was the Defendant able to limit discovery to the individual merits of the Plaintiff's claims? The Court's decision on this issue was clear:

> bifurcation is ordinarily the exception and not the rule…Defendant has not shown here that bifurcation would serve[] the interests of justice….Defendant has merely pointed out that individual claims are subject to individual defenses, but that is true for all putative class-action plaintiffs. For these reasons, Defendant's request for bifurcation is DENIED. The Court ADOPTS Plaintiff's proposed pretrial schedule.

*See* ECF No. 17. Unfortunately, the Defendant has not provided any calling or consent data related to any putative class member and the Plaintiff now must file this motion to receive such information.

Plaintiff Margo Simmons ("Plaintiff") received discovery responses from Author Reputation Press LLC ("Defendant" or "Author Reputation") on May 7, 2025. *See* <u>Exhibit 1</u>. In this putative class action alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") for making telemarketing calls to numbers on the National Do Not Call Registry, the Plaintiff sought information related to (1) where the Defendant acquired the telephone numbers from that they made telemarketing calls to (2) records of the telemarketing calls they made during the class period and (3)

1

any records of consent they had to make those calls (an affirmative defense they put at issue). The responses included 13 pages of documents and no calling or consent records[1].

This motion to compel follows.

## BACKGROUND

Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the

---

[1] There were references to the Plaintiff's name and telephone number, but no document that relates to her signed written agreement to receive telemarketing calls. In any event, there is no data related to any other telephone number called.

law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

Margo Simmons alleges that Author Reputation violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent. Plaintiff has never been a customer of Author Reputation and never consented to receive calls from Author Reputation. *See* ECF No. 1 at ¶ 19. *Id.* Despite this, the Plaintiff received calls from Author Reputation on at least December 13, 2023, February 1, 2024, April 29, 2024, June 3, 2024 and August 29, 2024 (twice). *Id.* at ¶ 20. The calls were from (888) 821-0229, a number for the Defendant. *Id.* at ¶ 21-22. During the first 3 calls the Plaintiff answered he informed the caller that he had not asked for the call and was not interested in their services. *Id.* at ¶26. Yet, the subsequent calls were made. *Id.* at ¶ 28. Other individuals have complained to the Better Business Bureau about similar conduct:

> The company has repeatedly violated the Do Not Call List. My phone has been registered for over ten years. They have called me first offering to "freely" promote my already published book at bookstores and then asking for fees. I told them I wasn't interested and to not call back. A couple of months later (1/29 2:32 PM) I get another call and then when I tell the individual that my book is already published, he hangs up. This company is irresponsible and doesn't follow the law.

*See Id.* at ¶ 29; https://www.bbb.org/us/ma/canton/profile/publishers/author-reputation-press-llc-0021-477587/complaints. Due to the *en masse* nature of telemarketing, the plaintiff filed this matter as a class action and the putative class is defined as follows:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Author Reputation's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

3

*See* ECF No. 1 at ¶ 32.

The Plaintiff has sought discovery that identifies the other individuals called as well as information related to the Defendant's affirmative defense of consent.

## LOCAL RULE 37.1(a) CERTIFICATION

Counsel for the Plaintiff Anthony Paronich and Defendant Andrew Schneiderman conferred on May 16, 2025 for approximately 15 minutes regarding the issues raised in this motion and while they resolved some issues, they did not reach agreement on the relief sought herein.

## LEGAL STANDARD

Rule 26(b)(1) provides, in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

As the party resisting discovery, Defendant bears "the burden of showing some sufficient reason why discovery should not be allowed." *Flag Fables, Inc. v. Jean Ann's Country Flags and Crafts, Inc.,* 730 F. Supp. 1165, 1186 (D. Mass. 1989) (citation and internal quotation marks omitted). Merely because compliance with a "Request for Production" would be costly or time-consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence "[Where] the plaintiff has a demonstrable need for the documents, the defendant undisputedly has possession of them, and the plaintiff has no other access to them . . . . the defendant has a duty pursuant to Rule 34 to produce [responsive documents].." *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 76 (D. Mass. 1976) (internal citations omitted).

## ARGUMENT

I. **The call records Plaintiff seeks are highly relevant to contested elements of Rule 23 and damages**

The disputed request at issue is below:

**Request No. 16: Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors during the putative class period:**
**a) the date and time;**
**b) the caller ID;**
**c) any recorded message used;**
**d) the result;**
**e) identifying information for the recipient; and**
**f) any other information stored by the call detail records.**

**RESPONSE:**

**Objection. Defendant objects to this request insofar as it seeks all documents concerning every telemarketing call placed by Defendant during the relevant time period without regard to the violation alleged or the manner in which the call was made. There are simply no qualifiers limiting the breadth of information requested by the Plaintiff. For example, there are no qualifiers regarding whether consent was/was not provided for the calls at issue, whether the calls were placed to a cellular phone or whether the calls even violated the TCPA etc. Plaintiff's request would undoubtedly lead to produce of myriad records for calls to individuals who are not part of the class.** *Cf. Fralish v. Digital Media Solutions,* **2021 U.S. Dist. LEXIS 22581 at \*22 (N.D. Ind. Nov. 17, 2021) ("RFP 21 does not limit the scope of the requested text messages in any way even though Mr. Fralish's Section 227(c) claim only concerns a specific type of text message sent to a specific type of person….As written, RFP 21 demand production of information pertaining to text messages beyond the scope of advertisement and marketing messages he challenges in this case and other irrelevant aspects of the business relationship between Digital and an unknown number of third parties.")[2]. Subject to, and without waiving its objection, Defendant will produce those materials in its possession, custody or control reflecting information for the three calls at issue placed to the Plaintiff.[3]**

*See* Exhibit 1.

The Defendant's position is in clear disregard for this Court's directive regarding the scope of discovery and the information should be compelled.

---

[2] Ironically, as discussed below, this case compelled classwide calling data in a TCPA case.

[3] As discussed above, there are far more than 3 calls at issue.

5

The call records Plaintiff seeks are highly relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23 and the calculation of class-wide damages.

As an initial matter, where defendants contest elements of Rule 23 in proposed class actions under the TCPA, courts routinely require the production of information necessary to support those requirements. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("RFPs 10-13 and 18 are relevant at least to the issues of numerosity and commonality. The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact" with those of the named plaintiffs.'"); *Mbazomo v. ETourandTravel, Inc*., No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (compelling the production of call data because "the Court agrees with the weight of authority on this matter that call logs and dialing lists are relevant to the commonality prong of the class certification inquiry. The requested list would also be relevant to Plaintiff's need to show numerosity.") (internal citation omitted). As the Northern District of Illinois explained:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> ***As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified***.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (emphasis added); *see also Central Alarm Signal, Inc. v. Business Fin. Servs., Inc.*, No. 14-14166, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (granting motion to compel in putative TCPA class action, in part, because "the Court cannot permit [Defendant] on the one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.") (quoting *Whiteamire Clinic, P.A.*, 2013 WL 5348377, at *3); *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer.").

In the same vein, "[o]utbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable." *Thomas v. Fin. Corp. of Am.*, No. 3:19-CV-152-E, 2019 WL 5157022, at *1 (N.D. Tex. Oct. 10, 2019) (compelling the production of similar data sought here); *Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable.").

Not surprising, then, is that courts across the country routinely compel TCPA class action defendants to provide analogous information relevant to the sizes of proposed classes. As the Northern District of Indiana explained:

> When certifying a class, the Court must find numerosity, commonality, typicality, and predominance. Fed. R. Civ. P. 23. Considering Federal Rule 23's threshold requirements, precertification discovery is appropriate to determine whether a class can be properly certified, and discovery should be sufficiently broad to allow a putative class plaintiff, like Mr. Fralish, a chance to meet these requirements.
>
>                  \*      \*      \*
>
> Nevertheless, courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. . . . Although the requested information here is not precisely a call list, it does

seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case.

*     *     *

As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.

For the foregoing reasons, Mr. Fralish is entitled to the class related data he seeks through Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35.

*Fralish v. Digital Media Sols., Inc.*, No. 3:21-cv-00045-JD-MGG, 2021 WL 5370104, at *9-10 (N.D. Ind. Nov. 17, 2021) (compelling the production of class data in a putative TCPA class action) (internal citations and quotations omitted); *accord Fralish v. Deliver Tech., LLC*, No. 3:20-CV-00353-DRL-MGG, 2021 WL 3285528, at *9 (N.D. Ind. Aug. 2, 2021) ("For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7-14 & 33, and ROGs 9-15.").

Also analogous, a Court in the Eastern District of Pennsylvania has held in a TCPA case while compelling the same data:

Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, *Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover

> "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").
>
> EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, the motion to compel should be granted here as there is a single discovery period at issue relating to merits discovery, class certification discovery and damages. As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the Plaintiff, or her expert, will determine which calls qualify for membership in the class in order to prepare this case for class certification. Because the sought-after Call Records are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production.

Indeed, multiple judges in this Court have recognized the appropriateness of producing calling record discovery in TCPA cases. First, Judge Burroughs granted a similar motion to compel in *Katz v. Liberty Power Corp., LLC*, 2020 U.S. Dist. LEXIS 112969, *10 (D. Ma. June 26, 2020) holding, "Given the availability of Defendants' call records, and the fact that such call records are relevant to Plaintiffs' claim that Defendants violated the TCPA, the Defendants are ordered to provide all records of calls made by Liberty Power's Telesales Channels to potential and prospective customers during the class period." Similarly, in granting a motion for class certification in *Mantha v. Quotewizard.Com,*

9

*LLC*, 347 F.R.D. 376, 385 (D. Ma.), Judge Sorokin recognized the need for calling data so the Plaintiff's expert could perform an analysis of that data:

> Mantha's expert, Verkhovskaya, prepared the "Class List" described in the proposed Class Definition. See generally Doc. No. [**11] 339-2. Her analysis was not an attempt to identify, via a scientific inquiry, all possible phone numbers satisfying subparts (a) to (c) of the proposed Class Definition. Rather, using standard data analysis techniques, she prepared a list, substantially at the direction of counsel for Mantha, of a subset of persons who satisfy the proposed Class Definition, while eliminating potential legal or factual issues by narrowing the Class. The data analysis techniques she utilized are well-established, fairly unremarkable, and plainly appropriate for use by an expert witness. Indeed, QuoteWizard, despite the vigorous defense at every stage of this case, makes no challenge to those techniques. The same is true of the standard software tools Verkhovskaya employed.
>
> Step 1: [**12] She eliminated from the call records all phone numbers that QuoteWizard obtained from its own websites. What remained were 5,090,954 sales leads/phone numbers, all of which QuoteWizard purchased from lead sources—entities that may, in turn, have purchased the numbers from other sources. Id.
>
> Step 2: Counsel for Mantha directed Verkhovskaya to exclude from the Step 1 list all numbers except those which QuoteWizard expressly authorized Drips to contact. Id. at 7. This was done, according to Mantha, because QuoteWizard claimed that Drips had sent some texts to consumers without authorization. Id.
>
> Step 3: Verkhovskaya took the Step 2 list and (a) excluded all numbers except those which records from Bandwidth and Twilio confirmed had received QuoteWizard's texts via Drips;6 then (b) excluded all numbers except those that had replied to the texts requesting that the messages cease. Id. Initially, Verkhovskaya identified the numbers described in Step 3(b) using a list created by [*386] Drips for QuoteWizard ("the Drips DNC list").7,8 Doc. No. 339-2 ¶ 59.
>
> Step 4: Verkhovskaya (a) verified that all remaining numbers were on the NDNCR before the consumer received a QuoteWizard text, and that the numbers received two texts in a twelve-month period; (b) removed the few numbers that responded to QuoteWizard's texts with an expression of interest, for whom QuoteWizard paid Drips for generating a successful lead; and (c) verified the remaining numbers were residential. Doc. No. 340 at 7-8. As to Step 4(b), she identified the numbers to exclude by reviewing text message responses preserved by QuoteWizard. Id. at 7. As to Step 4(c), she ran the numbers through the PacificEast database of known business numbers, removed any that were business-identified, and further applied a business keyword analysis to remove numbers associated with business names. Id. at 8.
>
> From this process, Verkhovskaya found that QuoteWizard had sent 314,828 text messages to 66,693 telephone numbers that "satisfied the [NDNCR] requirements of having received, on a residential number listed on the national do-not-call registry, more than one text message[] in a 12-month period."9 Id.

The Plaintiff is seeking the exact same type of data here so a similar analysis can be performed. The Court should compel this data.

Separately, Call Records are relevant to class-wide damages. Pertinent here, a TCPA plaintiff may bring an action to recover for actual monetary loss from a violation of the TCPA, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5). Because courts calculate damages under the TCPA based on the number of violations—in this case, the number of telemarketing calls delivered to class members during the class period—discovery is highly relevant to damages suffered by absent class members. For this additional reason, the Call Records Plaintiff seeks—which she will use to identify potential class members—are highly relevant and this Court should compel their production.

Finally, the Defendant's objections should be overruled. First, the Plaintiff is plainly seeking all documents related to the telemarketing call logs themselves, which is to say all of the data that is housed natively in the telemarketing call logs. As such, the Plaintiff is not requesting all documents of every kind related to any call the Defendant has made, the Plaintiff simply wishes to ensure that she gets all of the data captured in the single document they are seeking: the records of outbound calls. Indeed, in the *Katz* matter the request compelled by Judge Burroughs similarly requested "all records and/or call detail records for calls made…" *Katz* at *9. This is the same data that the Plaintiff seeks.

The Defendant's objections with respect to scope can be addressed as well. It is true that the only claim at issue is telemarketing calls to numbers on the National Do Not Call Registry, however, the Defendant has given no indication that it stores telemarketing call records limited to numbers that were on the National Do Not Call Registry. Indeed, if they do, the Plaintiff agrees her request can be so limited. However, as this Court held in *Mantha*, it is the Plaintiff's expert that typically undertakes

11

such an analysis. As such, the Defendant's production should include all telemarketing calls or be limited to calls to numbers on the National Do Not Call Registry. However, producing neither should not be an option.

   II.    **If the Defendant claims to have records of consent to make telemarketing calls, like it claims in its Answer, it should produce records supporting that assertion.**

The parties also have a dispute related to the Defendant's failure to produce consent evidence for any individual other than the Plaintiff. The request and response are below:

> **Request No. 17: Please provide all evidence of written consent to make calls in response to the foregoing, including any language that complies with the E-Sign Act.**
>
> **RESPONSE: Objection. Defendant objects to this request insofar as Plaintiff's Complaint does not include a claim under the E-Sign Act. Furthermore, there is no private right of action under this act which would otherwise permit Plaintiff to sue for a violation of the same. Accordingly, this request is not reasonably calculated to lead to the discovery of admissible evidence.**

*See* Exhibit 1.

> The Defendant's Answer includes the following affirmative defenses
>
> Plaintiff consented to being telephoned and/or receiving communications at the number provided and/or otherwise waived the right to claim lack of consent.

*See* ECF No. 5. It is sensible for the Defendant to put forward a claim that it had consent to make the calls at issue because the TCPA exempts from its scope telemarketing calls made with consumers' prior express written consent. *E.g.,* 47 U.S.C. 47 U.S.C. 227(b)(1)(A). "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the call will be made for the purpose of encouraging the purchase of goods or services. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 ¶ 7 (FCC 2012). The FCC's definition is consistent with the everyday

meaning of the term "prior express consent" meaning "[c]onsent that is clearly and unmistakably stated." *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009).

However, despite having the right to assert a consent defense, the Defendant has not produced any documents to support it. A telemarketer who claims it had consent to contact a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added).  The FCC has also noted: In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given.  We strongly suggest that senders take steps to promptly document that they received such permission. *Id.* at ¶46.

The case law has made this clear, including by the First Circuit Court of Appeals. *See Rosales v. Heath,* No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) ("The FCC ruled that 'if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the *caller* to prove that it obtained the necessary prior express consent." Consistent with that burden, all circuit courts deciding the question of whether consent is part of a prima-facia TCPA case or an affirmative defense have concluded that consent is an affirmative defense. *See Breda v. Cellco P'ship*, 934 F.3d 1, 4 (1st Cir. 2019) ("we understand consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim."); *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2nd Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014).").

Such requests have previously been compelled. *See e.g. O'Shea v. Am. Solar Solution, Inc.*, 2016 U.S. Dist. LEXIS 23420, *10 (S.D. CA.) ("These requests ask for documents concerning prior express **consent**, Defendant's methods for obtaining phone numbers, and removal requests by call recipients. (Id. Attach. #4 Ex. 1, at 15-19.) The items sought relate to American Solar's affirmative defenses and are discoverable. See Fed. R. Civ. P. 26(b)(1)"); *Stemple v. QC Holdings, Inc*., 2013 U.S. Dist. LEXIS 99582, *19-22 (S.D. Cal. June 17, 2013) (compelling Defendant to provide proof of express **consent** and finding the RFP necessary, proper in pre-class certification discovery, and not unduly burdensome). As another has held in a TCPA case when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, the Plaintiff has a legitimate need for this information and a reasonable expectation that it be produced.

Again, the Defendant's objections can be overruled. First, relevance cannot be materially disputed, as discussed above. Second, with respect to breadth, the Defendant misapprehends the Plaintiff's intent in asking for documents that also relate to the E-SIGN Act. The Plaintiff does not assert that there is a private right of action for an E-SIGN Act claim, she is instead referencing documents that need to be provided to demonstrate sufficient consent. As Judge Kelley has previously held:

> As Plaintiff notes, to be TCPA compliant, a consumer's consent to receive solicitations from a seller must comply with the E-SIGN Act. (#234-1 at 4 n.4.) This is consistent with TCPA regulations, which allow an electronic signature in connection with prior written consent if it complies with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules* 2012 ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording."). The E-SIGN Act provides that an electronic record may be used to provide information to a consumer that is

14

> required to be made in writing per a statute or regulation where the consumer is provided with certain disclosures, including how to withdraw consent. 15 U.S.C. § 7001(c). Those disclosures were not included in the consent form defendant identified.
>
> …Nor would a jury be able to find plaintiffs consent valid where the disclosure on the consent form did not contain those required under 15 U.S.C. § 7001(c) and 47 C.F.R. § 64.1200(f)(9). *Contra Winner v. Kohl's Dep't Stores, Inc.*, No. 16-cv-1541, 2017 U.S. Dist. LEXIS 131225, at *21 (E.D. Pa. Aug. 17, 2017) (finding valid consent where plaintiff was notified of right to withdraw consent and the procedures to do so, consistent with 15 U.S.C. § 7001(c)).

*Mantha v. Quotewizard.com, LLC*, 2021 U.S. Dist. LEXIS 245059, *24-25 (D. MA. 2021). As such, the Plaintiff has intentionally and legitimately asked for any consent documents that comply with the E-SIGN act. The request should be compelled.

## **CONCLUSION**

For the reasons stated herein, the Plaintiff requests that her motion to compel be granted and that the Court should award any relief under Fed. R. Civ. P. 37 that it deems appropriate.

Attorneys for Plaintiff,
By Counsel

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/ Anthony I. Paronich*
                                      Anthony I. Paronich